FILED
2012 Oct-03  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JEWEL L. BOWMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-10-S-2585-NE** |
| | ) | |
| **ITW SEXTON CAN COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff, Jewel L. Bowman, proceeding *pro se*, alleges that defendant, ITW Sexton Can Company, engaged in race-based employment discrimination by failing to retain her in the Quality Assurance Department and, instead, offering her a position in the packing department.[1]  This case is before the court on defendant's motion for summary judgment,[2] to which plaintiff has not responded.  Upon consideration of the brief on file and the evidence in the record, this court will grant the motion.

---

[1] Doc. no. 3 (Complaint Filed November 9, 2010).  While plaintiff's handwritten complaint does not specify the law that defendant allegedly violated, it appears from her charge against defendant with the Equal Employment Opportunity Commission (EEOC) that she is proceeding under Title VII, 42 U.S.C. § 2000e-2(a), which prohibits employment discrimination with respect to the compensation, terms, conditions, or privileges of employment on the basis of race, color, religion, sex, or national origin.  *See* doc. no. 3-1 (Attachment to Complaint), February 4, 2010 EEOC Charge, at 3.  (Because all of plaintiff's evidence appears in the docket as one attachment, all references to that evidence will be to a description of the evidence and to its page number in the attachment.)

[2] Doc. no. 55 (Defendant's Motion for Summary Judgment).

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 indicates that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[3]  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal

---

[3] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

quotations and citation omitted) (bracketed text suppled).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   The principle underlying this liberal construction standard is "to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).  However, such "leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds* (internal citations omitted). Moreover, "a litigant's *pro se* status in civil litigation generally will not excuse mistakes he makes regarding procedural rules." *Thompson v. United States Marine Corp.*, No. 09-16523, 2010 WL 3860578, at *3 (11th Cir. October 7, 2010) (*per curiam*) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")); *Albra v. Advan, Inc.*, 490 F.3d 829, 829 (11th Cir. 2007) (same).

On June 7, 2012, this court entered an order setting the deadline on defendant's motion for summary judgment, and stating that plaintiff's response was due by June

28, 2012.[4]  Over three months have elapsed since this court's deadline expired, and still, plaintiff has not filed a response.  Even so, a "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *Trs. of the Cent. Pension Fund of the Int'l Union of Operating Engrs. & Participating Emplrs. v. Wolf Crane Serv.*, 374 F.3d 1035, 1039 (11th Cir. 2004) (citing *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004)).[5]

## II.  SUMMARY OF FACTS

Defendant operates a manufacturing facility in Decatur, Alabama, and receives workers from Regal Employment, Inc. ("Regal"), an employment placement agency.[6] In December of 2009, one of defendant's Quality Assurance Technicians was on a leave of absence, and there was a backlog of work.[7]  As a result, defendant needed to hire a full-time Quality Assurance Technician and, also, to obtain temporary help to

---

[4] That order does not have a number in the docket.

[5] When a party did not respond to an opponent's statement of undisputed facts, this Circuit has repeatedly enforced local rules allowing a court to deem that failure to be an admission that no material factual dispute exists, *so long as* those rules did not permit the granting of summary judgment without a review of the record. *See, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291 (11th Cir. 2009) (enforcing a local rule from the Northern District of Georgia); *5800 SW 74th Ave.*, 363 F.3d at 1103 (enforcing a local rule from the Southern District of Florida); *Whitney Bank v. Davis-Jeffries-Hunold, Inc.*, 2012 U.S. Dist. LEXIS 95247 (S.D. Ala. July 10, 2012) (enforcing a local rule from the Southern District of Alabama).  However, the Northern District of Alabama does not appear to have such a rule.

[6] Exhibit A (Affidavit of Ana Allen), at 1; Exhibit B, at 1.

[7] Exhibit B (Affidavit of Brooke Barnes), at 1.

eliminate the backlog.[8]

Meanwhile, plaintiff, an African-American, applied for employment with Regal in November of 2009.[9]  Two weeks later, Regal contacted plaintiff and informed her about the Quality Assurance opening.[10]  After interviewing with Ana Allen, defendant's Human Resources Assistant, on December 1, 2009, plaintiff received a temporary assignment in Quality Assurance based in part on her prior work experience.[11]

Plaintiff's first day of work for defendant was December 7, 2009.[12]  As defendant is required to certify to its customers that its products meet their specifications, both the testing and recording of the test results are important to its business.[13]  Thus, plaintiff was assigned to train on Quality Assurance procedures and protocols with Brooke Barnes, a Quality Assurance Technician.[14]  Further, plaintiff received additional training from Lisa Lyons, another temporary employee already working in the Quality Assurance Department.[15]  Plaintiff was informed that the

---

[8] *Id.*

[9] Exhibit C (Deposition Testimony of Jewel L. Bowman), at 19 (lines 19-23) and 20 (lines 1-4).

[10] Exhibit C, at 23 (lines 22-23) and 25 (lines 1-10).

[11] Exhibit A, at 1.

[12]  *Id.*

[13] Exhibit B, at 1.

[14] *Id.*; Exhibit B, at 1.

[15] Exhibit B, at 1-2; Exhibit C, at page 31, lines 3-6.

training would take thirty days.[16]

Ms. Barnes observed that it was difficult for plaintiff to learn to use the gauges to check defendant's products and follow its Quality Assurance procedures.[17] Further, plaintiff asked Ms. Barnes so many questions that her productivity was below par, and Ms. Barnes was unable to catch up on her paperwork as quickly as needed.[18] Plaintiff alleges, however, that she only heard positive responses, and was never informed of any negative responses to her performance.  On the other hand, plaintiff alleges that she heard from other employees that "I wouldn't be in that QA position long because they don't hire any blacks in the QA position."[19]

After a little more than one week, Ms. Barnes told Ms. Allen that plaintiff was not working out in the Quality Assurance Department,[20] because she was having trouble learning to perform the tests and follow the procedures.[21] As a result of Ms. Barnes' report, Ms. Allen offered plaintiff the option of working as a packer for defendant at the same rate of pay.[22] During that conversation, plaintiff alleges that Ms. Allen described the reassignment as a "demotion" and stated that plaintiff

---

[16] Doc. no. 3-1, February 4, 2010 EEOC Charge, at 3.

[17] Exhibit B, at 1.

[18] *Id.*

[19] Doc. no. 3-1, July 8, 2010 Information Regarding EEOC Charge, at 3

[20] *Id.*

[21] Exhibit A, at 1.

[22] *Id.*

"needed to be a packer before becoming a QA."[23]  Plaintiff then informed her that she did not want the job.[24]

Sometime before Ms. Barnes told Ms. Allen that plaintiff was not working out in Quality Assurance, defendant offered a permanent position to Ms. Lyons,[25] a white female.[26]   As of February 4, 2010, the Quality Assurance Department had six employees, and all of them were white.[27]

Ms. Barnes testified that she told Ms. Allen that plaintiff was not working out in Quality Assurance because she had difficulty learning defendant's quality assurance procedures, not because of her race.[28]  Likewise, Ms. Allen testified that she decided that plaintiff was not working out in Quality Assurance, and that she should be reassigned to packing, on the basis of her performance, not her race.[29]   Plaintiff believes, nonetheless, that her "race is the reason, the employer did not want [her] as a QA."[30]

Plaintiff filed an EEOC charge of race-based discrimination against defendant

---

[23] Doc. no. 3-1, February 4, 2010 EEOC Charge, at 3 (alteration supplied).

[24] Exhibit A, at 1.

[25] Exhibit B, at 2.

[26] Doc. no. 3-1, February 4, 2010 EEOC Charge, at 3.

[27] *Id.*

[28] *Id.*

[29] Exhibit A, at 1-2.

[30] Doc. no. 3-1, February 4, 2010 EEOC Charge, at 3 (alteration supplied).

7

on February 4, 2010,[31] and an EEOC investigator conducted a pre-determination interview on July 27, 2010.[32]  During the interview, the investigator advised plaintiff that the EEOC lacked jurisdiction to assist her because she was an employee of Regal, not defendant.  Plaintiff acknowledged that she was paid by Regal, not defendant, and that she had been employed by defendant conditionally, on a ninety-day trial basis.[33] The EEOC closed its file on plaintiff's charge on August 5, 2010, because there was no employer/employee relationship between plaintiff and defendant.[34]

### III. DISCUSSION

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

The Supreme Court held in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), that the plaintiff has the burden of establishing a *prima facie* case of discrimination. If the plaintiff does so, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *Id.*

This court will grant defendant's summary judgment motion on two separate

---

[31] *Id.*

[32] *Id.*, July 27, 2010 Pre-Determination Interview, at 4.

[33] *Id.*

[34] *Id.*, August 5, 2010 Dismissal, at 1.

grounds:  first, that plaintiff cannot establish a *prima facie* case of race-based employment discrimination; and second, that defendant had a legitimate, nondiscriminatory reason for failing to retain her in the Quality Assurance Department.

### A.     *Prima Facie* **Case**

To establish a *prima facie* case of employment discrimination, plaintiff must show (1) that she is a member of a protected class, (2) that she was qualified to do the job, (3) that she was subject to adverse employment action, and (4) that her employer treated similarly situated employees outside that class more favorably.  *McDonnell Douglas*, 411 U.S. at 802; *see also McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).  As defendant only asserts that plaintiff cannot establish the last two elements, this court will confine its analysis to just those elements.

### 1.     **Adverse employment action**

The courts have interpreted the Title VII prohibition on discrimination with respect to the "compensation, terms, conditions, or privileges of employment" to require the plaintiff to establish an "adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001) (citing *Merriweather v. Alabama Dept. of Pub. Safety*, 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998), *aff'd*, 199 F.3d 443 (11th Cir. 1999)).  To meet that standard, plaintiff must show a "serious and

material" change in the terms, conditions, or privileges of her employment.  *Id.*

"Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  *Davis*, 245 F.3d at 1239.  "In a vast majority of instances . . . a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause ."  *Id.* at 1245.

As plaintiff has submitted no response in opposition to defendant's motion for summary judgment, this court's analysis of relevant cases will necessarily be brief. In *Davis*, an African-American police officer asserted a claim of racial discrimination after he was temporarily removed as the designated Officer-in-Charge based on two corrective job performance memos.  245 F.3d at 1234. The court concluded that the memos did not have a material impact on the terms and conditions of plaintiff's employment, *id*. at 1240, because the Officer-in-Charge designation was not permanent, and did not offer an increase in salary, an increase in benefits, or unique advancement opportunities.  *Id.* at 1244.

Similarly, in *Cantrell v. Jay R. Smith Manufacturing Company*, 248 F. Supp. 2d 1126 (M.D. Ala. 2003), the plaintiff asserted a claim of retaliation after experiencing:

10

(1) a change in her duties to include clerical work, (2) modification of her position because she no longer reported directly to [her original supervisor], but instead, reported directly to [someone else], (3) failure to adequately train or provide the tools for her Corel presentations, (4) failure to receive certain software, (5) adverse treatment in matters relating to sick leave, and (6) placement of negative job performance memoranda in her personnel file.

*Id.* at 1137 (alterations supplied). The court dismissed her claim on the grounds that

> [a] materially adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). Thus, even if Plaintiff proved that her job responsibilities were altered to include clerical work and she was directed to report directly to [one supervisor], instead of [another], such actions do not rise above mere "alterations of job responsibilities" when the actions are unaccompanied by any tangible harm, and thus do not constitute an adverse employment action.

*Id.* (alterations and emphasis supplied).

Upon terminating plaintiff's employment in the Quality Assurance Department, Ms. Allen immediately offered plaintiff the option of working as a packer for defendant at the same rate of pay.[35] According to plaintiff's EEOC charge, Ms. Allen stated that plaintiff "needed to be a packer before becoming a QA,"[36] which suggested that the reassignment was not permanent. Plaintiff has provided no evidence that the Quality Assurance position offered better hours, an increase in benefits, or unique advancement opportunities. In fact, she has produced no explanation for rejecting the

---

[35] Exhibit A, at 1.

[36] Doc. no. 3-1, February 4, 2010 EEOC Charge, at 3 (alteration supplied).

11

packer position at all.  On this record, it appears that the transfer would have been, at best, a "mere inconvenience," and at worst, simply an "alteration of job responsibilities."  *See Cantrell*, 248 F. Supp. 2d at 1137.  Thus, plaintiff has not shown that she suffered a "serious and material" change in the terms, conditions, or privileges of her employment.

### 2.    More favorable treatment of similarly situated employees

Plaintiff must also show that defendant treated a similarly situated employee who was not a member of her protected class more favorably.  *McDonnell Douglas*, 411 U.S. at 802; *see also McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).

> When a claim alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations and quotation marks omitted).  When making that determination, "we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (citation omitted)[.]

*Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (alteration supplied; footnote omitted).

In asserting her claim of discrimination, plaintiff argues that defendant made an offer of permanent employment to Ms. Lyons, a white female.[37]   However,

---

[37] Doc. no. 3, at 3.

although both plaintiff and Ms. Lyons were temporary employees working in the Quality Assurance Department,[38] it appears that the similarity ends there.  First, by the time that plaintiff received her temporary assignment, Ms. Lyons was already working in the Quality Assurance Department.[39]  Second, there is no evidence that Ms. Lyons had trouble learning to perform the tests and follow the procedures.  Indeed, Ms. Lyons helped Ms. Barnes train plaintiff to do that work.[40]  As plaintiff and Ms. Lyons clearly did not engage in "nearly identical" conduct, plaintiff cannot show that defendant treated a similarly situated employee who was not a member of her protected class more favorably.

## B.    Legitimate, Non-Discriminatory Reason

Even assuming that plaintiff had borne her burden of establishing a *prima facie* case of discrimination, defendant can "articulate some legitimate, nondiscriminatory reason" for its action.  *McDonnell Douglas*, 411 U.S. at 802.  If defendant is successful, the burden shifts back to plaintiff to show that defendant's stated reason "was in fact pretext."  *Id.* at 804.

"To show pretext, a plaintiff must 'come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit

---

[38] Exhibit B, at 1-2; Exhibit C, at page 31, lines 3-6.

[39] *Id.*

[40] *Id.*

a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

However, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030 (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000)). Further,

> "Title VII addresses *discrimination*." *Ferguson v. Veterans Administration*, 11 Cir.1984, 723 F.2d 871, 872. "Title VII is not a shield against harsh treatment at the workplace." *Jackson v. City of Kileen*, 5 Cir.1981, 654 F.2d 1181, 1186. Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. *Megill v. Board of Regents*, 5 Cir.1976, 541 F.2d 1073, 1077; *Sullivan v. Boorstin*, 1980, D.D.C., 484 F. Supp. 836, 842.

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis in original).

14

According to defendant's statement of uncontested facts, Ms. Barnes observed that it was difficult for plaintiff to learn to use the gauges to check defendant's products and follow its Quality Assurance procedures.[41]  Further, plaintiff asked Ms. Barnes so many questions that her productivity was below par and that Ms. Barnes was unable to catch up on her paperwork as quickly as needed.[42]  When an employee entrusted with training a worker notifies the employer that the worker is having trouble learning the requirements of her position and is becoming a distraction to defendant's other employees in the process, it is obvious that this "might motivate a reasonable employer" to transfer that worker to another department.  *See Chapman*, 229 F.3d at 1030.  Because plaintiff has produced no evidence to show that Ms. Barnes' observations were false, or that defendant was actually motivated by animus against African-Americans, she has not rebutted defendant's legitimate, non-discriminatory reason for the transfer.

## IV.  CONCLUSION

Inasmuch as plaintiff cannot establish a *prima facie* case of race-based employment discrimination, and as defendant had a legitimate, nondiscriminatory reason for failing to retain her in the Quality Assurance Department, the motion for summary judgment is GRANTED, and plaintiff's complaint is DISMISSED WITH

---

[41] Exhibit B, at 1.

[42] *Id.*

PREJUDICE.  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE and ORDERED this 3rd day of October, 2012.

United States District Judge